IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSE LUIS AREVALO | : | MISCELLANEOUS |
| vs. | : | |
| UNITED STATES OF AMERICA | : | NO. 05-110 |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                               **FEBRUARY 8, 2011**

Presently before this Court is Defendant, United States of America's ("Government"), Motion for Summary Judgment against Plaintiff, Jose Luis Arevalo (Arevalo). Arevalo, a convicted drug felon and money launderer seeks relief under Federal Rule of Criminal Procedure 41(g)[1] for return of $459,370.00 in United States currency seized by federal agents on July 13, 1999. For the reasons stated below, this Motion is granted.[2]

### I.   FACTS AND PROCEDURAL BACKGROUND

On July 13, 1999, in connection with an investigation of a large scale marijuana distribution and money laundering operation, U.S. Customs Service Agents in Philadelphia,

---

[1]Federal Rule of Criminal Procedure 41(g) provides:

> **Motion to Return Property.** A person aggrieved by an unlawful search and seizure of property or by deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

[2]Arevalo states in his pro se Response to the Government's Motion that he too is seeking a grant of Summary Judgement. For the reason discussed, infra, Arevalo's Motion is denied.

Pennsylvania, seized the property of several individuals including Arevalo and two other men, John Dugery ("Dugery") and George Early ("Early"). The agents seized from Early $459,370 in United States currency together with other personal property, and published notice of its seizure of this property. Specifically, on May 10, May 17 and May 24, 2000, the government published notice of the seizure in the Philadelphia Daily News.[3] No claims for return of the seized currency were filed with the U.S. Customs Service within the time required by law. Therefore, on May 31, 2001, the U.S. Customs Service administratively forfeited the seized currency.

Arevalo and Dugery were prosecuted in the Middle District of Florida for conspiracy to distribute marijuana.[4] On May 4, 1999, a grand jury in the Middle District of Florida returned an indictment against Arevalo and others charging them with conspiracy to distribute marijuana, in violation of 18 U.S.C. § 846, and money laundering, in violation of 18 U.S.C. § 1956. <u>United States v. Jose Louis Arevalo</u>, No. 99-CR-158-EAK-1 (M.D. Fla.). On February 15, 2000, a jury convicted Arevalo of conspiracy to distribute and to possess with intent to distribute 1,000 kilograms or more of marijuana and conspiracy to commit money laundering. On January 12, 2001, the Court there sentenced Arevalo to a term of 360 months imprisonment and 72 months supervised release. The conviction and sentence were affirmed by the Eleventh Circuit Court of

---

[3]Also, on May 8, 2000, the United States Customs Service sent written notice of the proposed forfeiture directly to Early, and his counsel, even though Early abandoned his interest in the property at the time of the seizure. The U.S. Customs Service also sent notice directly to Dugery.

[4]Dugery pleaded guilty to Counts One and Two of an Information charging him with conspiracy to distribute marijuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). <u>United States v. Dugery</u>, No. 99-CR-284-EAK (M.D. Fla.). Dugery admitted to conspiring with Arevalo to distribute marijuana and commit money laundering. (Def.'s Mot. Summ. J., Ex. Plaintiff at 668-69, 717-719.)

Appeals. United States v. Arevalo, 37 Fed. Appx. 504 (Table) (11th Cir. 2002). On October 7, 2002, the United States Supreme Court denied Arevalo's Petition for Writ of Certiorari. Arevalo v. United States, 537 U.S. 926 (2002). Arevalo is currently an inmate at the United States Penitentiary in Herlong, California.

On June 6, 2005, Arevalo filed a Motion for Return of Seized Property Pursuant to Fed. R. Crim. P. 41(g). In this Motion, Arevalo claimed an interest in the seized currency, and contended that the U.S. Customs Service was aware of his interest at the time of the seizure. (Pl.'s Mot. for Return of Seized Property, at 1.) As a result, he contended that the forfeiture of the currency was void because the government did not provide him with notice of the forfeiture. Id.

The government responded to Arevalo's Motion, arguing that Rule 41(g) did not apply to this proceeding, and that the Motion should have been filed pursuant to Section 983(e) of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"). Pub. L. 106-185, 114 Stat. 202 (2000).[5] Section 983(e) codified the practice of federal courts in exercising equitable jurisdiction to review the merits of a forfeiture matter. The Government asserted that since CAFRA applies, Arevalo's Rule 41 Motion was barred by the five-year statute of limitation under the statute. We agreed and dismissed the Motion on January 16, 2006.

Arevalo appealed this ruling in the Court of Appeals on May 16, 2006. On August 22, 2007, the Third Circuit vacated judgment and remanded the matter back to this Court for further

---

[5]Effective December 1, 2002, the former Rule 41(e) has been renumbered 41(g), with only stylistic changes. See Rule 41, Adv. Comm. Notes, 2002 Amendments. Although the present motion is brought under Rule 41(g), many of the cases cited herein were brought under the predecessor Rule 41(e), and, for purposes of the present motion, the two Rules are used interchangeably.

proceedings. Arevalo v. United States, 238 Fed. Appx. 869, No. 06-2813, 2007 WL 2381039, at *1 (3d Cir. Aug. 22, 2007).[6] The Government timely filed an answer to the Motion, and Arevalo filed a Motion for Summary Judgment on June 23, 2008. On August 20, 2008, we entered a Memorandum and Order denying this Motion. See Jose Luis Arevalo v. United States, No. 05-110, 2008 WL 3874795, at * 1 (E.D. Pa. Aug. 20, 2008). The Government filed the instant Summary Judgment Motion on October 14, 2010.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) states that summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." See Hines v. Consol. Rail Corp., 926 F.2d 262, 267 (3d Cir. 1991). The Court asks "whether the evidence presents a sufficient disagreement to require submission to the jury or whether . . . one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The moving party has the initial burden of informing the court of the

---

[6]The Court specifically determined that although Arevalo characterized his Motion as a Rule 41(g) Motion, "when the property in question has already been forfeited, we will construe a Rule 41(g) motion as a civil action in equity." See also U.S. v. McGlory, 202 F.3d 664, 670 (3d Cir. 2000).

The Court further held that CAFRA, which became effective on August 23, 2000, did not apply in this case because the forfeiture challenged by Arevalo commenced prior to this date. The Court concluded that "regardless of when Arevalo filed his civil action, because the challenged forfeiture proceeding commenced prior to CAFRA's effective date, CAFRA's limitation period does not apply." Arevalo, 238 Fed. Appx. at 870-871.

Additionally, the Court found that pre-CAFRA actions involving the forfeiture of property by the United States without proper notice are subject to a six-year limitation period. See 28 U.S.C. § 2401(a). The Court held that the earliest time that Arevalo's claim could have accrued was July 13, 1999, when the property was seized. Since his action was filed on May 30, 2005, less than six years later, the Third Circuit determined that the action was barred by the statute of limitations period. Id.

basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is material if it could affect the outcome of the suit after applying the substantive law. Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'" Compton v. Nat'l League of Prof'l Baseball Clubs, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358, 1362-63 (3d Cir. 1992). "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion. Tziatzios v. United States, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996). If the court determines that there are no genuine issues of material fact, then summary judgment will be granted. Celotex, 477 U.S. at 322.

## III. DISCUSSION

Although brought pursuant to the Federal Rules of Criminal Procedure, a motion for the return of property under Rule 41(g) is treated as an "equitable civil proceeding." United States v. Bennett, 424 F.3d 271, 274 (3d Cir. 2005); see also United States v. McGlory, 202 F.3d at 664; United States v. Bein, 214 F.3d 408, 411 (3d Cir. 2005). Where a defendant files a Rule 41(g)

motion after the conclusion of criminal proceedings, there is a presumption that the owner of the property has a right to its return. See United States v. Chambers, 192 F.3d 374, 377 (3d Cir. 1999). In the absence of a pending criminal proceeding, the evidentiary burden for a Rule 41(g) motion shifts to the government. Id. at 375. The government then has the burden of establishing a legitimate reason to retain the property. Id. at 377. At that point, a presumption exists that the person from whom the property was allegedly taken has a right to its return, and, to rebut the presumption, the government must prove that it has a legitimate reason to keep the property. Id. "Generally, a Rule 41(e) motion is properly denied 'if the defendant is not entitled to lawful possession of the seized property, the property is contraband or subject to forfeiture or the government's need for the property as evidence continues.'" Id. at 377, citing United States v. Van Cauwenberghe, 934 F.2d 1048, 1061 (9th Cir. 1991).

### A. Standing

The Government first asserts that its Motion for Summary Judgment should be granted because Arevalo lacks standing to bring the action. We agree. Standing is a threshold consideration in all cases, including matters relating to challenges to the forfeiture of property by the government. See United States v. $8,221,877.16 in U.S. Currency, 330 F.3d 141, 150, n.9 (3d Cir. 2003), citing United States v. Contents of Accounts 3034504504 & 14407143 (In re Friko Corp.), 971 F.2d 974, 984-85 (3d Cir. 1992) (Article III standing is more focused in forfeiture cases on whether claimant is either the colorable owner of the res or has any colorable possessory interest in it).

Generally, the issue of standing in the federal courts is jurisdictional and not subject to waiver. See, e.g., Lewis v. Casey, 518 U.S. 343 (1996). Standing is open to review at every

stage of litigation, and, even if not raised by the parties, the Court has an independent obligation to review its own jurisdiction. See Nat'l Org. Of Women v. Scheidler, 510 U.S. 249 (1994). The party seeking to invoke the jurisdiction of the court bears the burden of proving that he has standing. See Kadonsky v. United States, 216 F.3d 499, 508 (5th Cir. 2000.)

In the forfeiture context, every person who seeks to challenge the forfeiture of property must establish both "statutory standing" and "Article III" standing. United States v. $8,221,877.16 in U.S. Currency, 330 F.3d at 150, n.9, citing In re Friko Corp., 971 F.2d at 984. Statutory standing requires the claimant to comply with the statutory procedures regarding the filing of the claim, and Article III standing requires a claimant to establish that he or she has a valid ownership or possessory interest in the property subject to forfeiture that entitles him to defend some portion of the property against its forfeiture. United States v. $487,825.00 in U.S. Currency, 484 F.3d 662, 664 (3d Cir. 2007). Article III standing requires a claimant to show an interest in the property sufficient to create a case or controversy. $8,221,877.16 in U.S. Currency, 330 F.3d at 150, n.9, citing In re Friko Corp., 971 F.2d at 984.

It is well-established that a person does not have Article III standing to litigate a forfeiture matter against the government unless he has a cognizable legal interest in the particular asset subject to forfeiture. See Mantilla v. United States, 302 F.3d 182, 185 (3d Cir. 2002); In re Friko Corp., 971 F.2d at 984. To meet this requirement, the claimant must present "some evidence of his ownership interest to establish standing to contest a forfeiture." Kadonsky, 216 F.3d at 508. Such a burden is not rigorous. See United States v. U.S. Currency, $81,000, etc., 189 F.3d 28, 35 (8th Cir. 2003); Matthews v. United States, 917 F. Supp. 1090, 1104 (E.D. Va. 1996) (Rule 41 requires a "comparatively low standing threshold").

It is well-settled that a bare assertion of ownership in the property, without more, is not enough to prove an ownership interest sufficient to establish standing. Id.; see also United States v. Bethea, 317 Fed. Appx. 182, *2 (3d Cir. 2009); Munoz-Valencia v. United States, 169 Fed. Appx. 150, 152 (3d Cir. 2006). To prove standing, a claimant must show that he has a colorable ownership or possessory interest in the funds. Contents of Accounts Nos. 3034504504 and 144-07143, 971 F.2d at 985. In Mantilla, the defendant filed an action seeking return of funds that government agents obtained from him and his co-conspirators during an undercover operation. The district court granted summary judgement for the government holding that public policy barred the return of funds that were voluntarily exchanged during a narcotics transaction. On appeal, the Third Circuit held that the claimant did not have standing to contest the administrative forfeiture of a portion of the seized funds. It held that "to prove standing, the [claimant] must show that he has a colorable ownership or possessory interest in the funds." 302 F.3d at 185. The court noted that the facts showed that the agents confiscated the funds from a vehicle that Mantilla did not own, possess, or occupy. Id. The court stated that Mantilla failed to present any "evidence from which a reasonable trier of fact could discern his colorable interest in this amount." Id.

Here, Arevalo has not presented any evidence demonstrating a colorable ownership or possessory interest[7] in the seized currency sufficient to meet the Article III standing requirement. Rather, he can only base his bare unsubstantiated claim that he owns the property on an unsupported hearsay statement allegedly made by Dugery at the time of the seizure. Arevalo

---

[7]Possession is not an issue here since it is uncontested that the U.S. Customs agents seized the money from Earley and Arevalo was incarcerated at that time.

alleges that at the seizure, "Dugery made it known to U.S. Customs agents that Jose Luis Arevalo owned this money." (Def.'s Mot. Summ. J., Ex. H, ¶ 2.)

The government attempted during discovery to ascertain the nature of Arevalo's interest in the seized money. In response, however, Arevalo gave only self-serving non-responsive answers to interrogatories. Arevalo only responded in interrogatories that "Dugery was transporting the subject property for me, and was under instructions to deliver the property to me, and had been in the process of transporting the property." (Def.'s Mot. Summ. J., Ex. O at 4.) In addition, Arevalo was deposed in this matter and generally refused to answer questions concerning ownership of the seized money at issue.

> Q. How did you find out that Dugery made it known to U.S. Customs that you owned the money? Do you understand my question?
> A. Yeah. I'm not going to answer the questions.
> Q. All right, your objection for the record is noted. Let me move on. What is your interest in the money that was seized by the U.S. Customs agents in Philadelphia and is the subject of this case?
> A. It's my money.
> Q. Why is it your money? Let me ask you, let me clarify the question. What was your money doing in Philadelphia?
> A. I'm not going to answer it, objection.
> Q. Objection noted for the record. Did Mr. Dugery at that time on July 13th, 1999, did Mr. Dugery owe you this money?
> A. No, he didn't owe me the money. It was my money.
> Q. Why was Mr. Dugery in Philadelphia with your money?
> A. Well, let's just say he was holding it for me.
> Q. Why was he holding the money for you?
> A. I'm not going to answer that. Objection.

(Def.'s Mot. Summ. J., Ex. M at 24-25.)

. . . .

> Q. What was Mr. Earley's business with Mr. Dugery on July

|      |                                                                                                                                                                                                 |
|------|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|      | 13th, 1999?                                                                                                                                                                                     |
| A.   | I'm not going to answer that question. Objection.                                                                                                                                               |
| Q.   | If I may ask you the basis of your objection?                                                                                                                                                   |
| A.   | Well, I still believe it is irrelevant.                                                                                                                                                         |
| Q.   | Okay. Mr. Arevalo, I will get right to the point, was that money that was in Philadelphia seized by U.S. [C]ustoms agents on July 13th, 1999, was that the proceeds of your drug dealing activities? |
| A.   | I'm not going to answer that.                                                                                                                                                                   |
| Q.   | And the basis of your objection?                                                                                                                                                                |
| A.   | Irrelevant.                                                                                                                                                                                     |

(Id. at 26.)

. . . .

| Q. | When did Dugery tell you? Do you recall when he told you the money was seized? |
|----|--------------------------------------------------------------------------------|
| A. | He told me when we were in the county jail in Tampa.                            |

(Id. at 26.)

. . . .

| Q. | What did Dugery tell you?        |
|----|----------------------------------|
| A. | I'm not going to answer that.    |
| Q. | Relevancy?                       |
| A. | Yes.                             |

(Id..)

. . . .

| Q. | Okay, I want to ask you this one last question, and I want to ask it one last time, what was the source of funds that you claim were, that you owned that were seized by customs agents on July 13th, 1999? |
|----|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| A. | It's irrelevant. Objection.                                                                                                                                                                                 |

(Id. at 28-29.)

Arevalo also refused to answer other questions regarding his assets and income. (Id.) He

10

did, however, acknowledge that he admitted to agents that he imported and distributed marijuana, although he claimed that such admission was made under coercion alleging that the agents threatened to arrest his mom, dad, and wife. (Id. at 26.)

Arevalo's bare assertion that Dugery was transporting the currency for him and that Dugery was under instructions to deliver the currency to him is not sufficient to show that he exercised dominion and control over the property. Arevalo has simply offered no evidence that he had a colorable interest in the property. Not only has Arevalo failed to produce any evidence of a colorable interest in the property, but he outright refused to explain the nature of his relationship to the property when given the opportunity to do so at his deposition. Thus, Arevalo has failed to meet the low threshold to establish Article III standing in this case. His unsupported allegations regarding the seized money do not satisfy the standing requirement necessary for him to challenge the forfeiture of the property in federal court. Accordingly, this Court lacks jurisdiction to consider Arevalo's Rule 41 motion, and the Government's Motion is granted.

## B. Due Process

Arevalo has asserted that his due process rights were violated during the administrative forfeiture of the seized money. The Government counters that Arevalo cannot challenge the completed administrative forfeiture of the seized money because he was not a party that was required to receive notice of the agency's forfeiture proceedings. We again agree.

21 U.S.C. § 881(a) authorizes the civil forfeiture of property that constitutes the proceeds of illegal drug transactions. That section specifically provides for the civil forfeiture of property or money "furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such exchange, and all moneys

. . . used or intended to be used to facilitate any violation of this subchapter." 21 U.S.C. § 881(a)(6). This section also provides that relevant provisions of the custom laws, 19 U.S.C. § 1600, et seq., are to be applied to seizures and forfeitures pursuant to Section 881. See 21 U.S.C. § 881(d).

Where, as here, the seized property is $5000,000 or less, the government may use the administrative process governed by the customs laws. This process entails no judicial involvement. 19 U.S.C. § 1607; 21 U.S.C. § 881(d); United States v. McGlory, 202 F.3d at 670. The government is required to publish notice of its intent to forfeit the property once a week for three weeks and to send written notice to any party known to have an interest in the property. See 19 U.S.C. § 1607(a). If a claimant files a claim and a cost bond within 20 days after the first publication, the administrative process is halted and the seizing agency must turn the matter over to the United States Attorney to commence a judicial forfeiture proceeding, see 19 U.S.C. § 1608, which is the procedure automatically followed for property valued over $500,000. See 19 U.S.C. § 1610. If a claimant fails to file the bond to contest the forfeiture, the seizing agency will make a declaration of forfeiture and title will vest in the United States. See 19 U.S.C. § 1609(a). This administrative declaration has the same effect as a final decree and order of forfeiture entered in a judicial proceeding. See 19 U.S.C. § 1609(b). United States v. McGlory, 202 at 670.

A district court ordinarily lacks jurisdiction to review the DEA's administrative forfeiture proceedings. See Linarez v. United States Dep't of Justice, 2 F.3d 208, 212 (7th Cir.1993) ("[O]nce the government initiates an administrative forfeiture proceeding and the property is not the subject of an ongoing criminal proceeding, the district court loses jurisdiction to resolve the issue of return of property"). However, "the federal courts have universally upheld jurisdiction

to review whether an administrative forfeiture satisfied statutory and due process requirements." United States v. McGlory, 202 F.3d at 669-70; see also United States v. Woodall, 12 F.3d 791, 793 (8th Cir. 1993).

It is undisputed here that the U.S. Customs Service administratively forfeited the seized currency without providing direct notice to Arevalo. Thus, the issue is whether Arevalo was denied due process because he was not provided with notice of the forfeiture proceeding. Besides notice by general publication, as noted above, the customs laws only require the agency to provide notice of the forfeiture "to each party who appears to have an interest in the seized article." 19 U.S.C. § 1607(a); United States v. McGlory, 202 F.3d at 669-70 (government is required to send written notice to any party known to have an interest in the property).

It is clear from the evidence of record that Arevalo did not have an "interest" in the seized currency, and thus, U.S. Customs was not required to provide Arevalo with notice of the forfeiture. The evidence shows that in approximately May 1999, U.S. Customs agents in Pennsylvania conducted a collateral criminal investigation of Dugery and others involved in the distribution of marijuana. (Tutko Aff., ¶ 5.) Following the arrests of Arevalo and Dugery in May 1999, agents investigated Dugery's involvement with narcotics distribution and money laundering in Pennsylvania in connection with Arevalo's drug organization. (Id.) On July 13, 1999, U.S. Customs agents in Pennsylvania seized the $459,370 at issue from Earley for forfeiture purposes as the proceeds of Dugery's marijuana distribution activities. (Id. at ¶ 9.)[8] It is undisputed that Dugery and Earley later filed no claims with U.S. Customs for the return of the

---

[8] At the time of the seizure, agents recovered part of the currency in a large bucket located in Early's truck, and the remaining currency from two buckets that Earley had buried. (Tutko Aff., ¶ 8.)

13

seized currency.

As discussed above, there is no credible evidence that Arevalo had a colorable ownership in the seized currency. Indeed as noted, when given the opportunity during his deposition to explain his ownership of the property, Arevalo refused to answer. (Def.'s Mot. Summ. J., Ex. M at 24-29.) Accordingly, there is no due process violation, and the Government's Motion should also be granted for this reason.

### C. Illegal Drug Proceeds

Even if we were to find that Arevalo has standing and the administrative forfeiture void because of inadequate notice, Arevalo would still not be entitled to the seized currency because the overwhelming evidence in this record establishes that the currency was traceable to illegal drug transactions.

The purpose of 18 U.S.C. § 881(a)(6) is to ensure that persons do not benefit from their illegal acts, and the law is clear that a claimant cannot prove lawful possession of drug money. See 21 U.S.C. § 881(a) ("no property rights shall exist" in illegal drug proceeds); United States v. Chambers, 192 F.3d 374, 376 (3d Cir. 1999) (property must be returned once criminal proceedings have concluded, unless it is contraband or subject to forfeiture); See also United States v. Clymore, 245 F.3d 1195, 1201 (10th Cir. 2001).

Rule 41 stands for the principle that the government may seize evidence for use in a criminal investigation and trial, but it should promptly return the property to its rightful owner when it no longer has a claim to possession, so long as the property is not contraband or subject to forfeiture. See United States v. Chambers, 192 F.3d at 376. However, the court may deny a Rule 41 motion "if the defendant is not entitled to lawful possession of the seized property, the

14

property is contraband or subject to forfeiture or the government's need for the property as evidence continues." Id. at 377.

Here, as already discussed, Arevalo cannot prevail on his Rule 41 Motion because he has failed to establish any "colorable" interest in the seized property. In addition, there is nothing in the record to show that the source of the seized currency is anything other than proceeds from illegal drug trafficking. As noted earlier, the currency ($459,370) that Arevalo seeks to be returned to him, was seized by U.S. Customs agents from Early in connection with a large scale marijuana distribution and money laundering operation involving Dugery. Arevalo and Dugery were prosecuted in the Middle District of Florida. Dugery admitted to conspiring with Arevalo to distribute marijuana and commit money laundering. (Def.'s Mot. Summ. J., Ex. Plaintiff at 668-69, 717-719.) In February 2000, Arevalo was convicted of conspiracy to distribute and to possess with intent to distribute 1,000 kilograms of marijuana and conspiracy to commit money laundering, and he was sentenced to a term of 360 months imprisonment. See U.S. v. Jose Louis Arevalo, No. 99-CR-158-EAK-1 (M.D. Fla.).[9] For the foregoing reasons, the Government's Motion for Summary Judgment is granted.

An appropriate Order follows.

---

[9]In addition, Arevalo's claims under Rule 41 are also barred under the equitable doctrine of unclean hands. Under this doctrine, equitable relief would not be available "when the party seeking relief has committed an unconscionable act immediately related to the equity the party seeks in respect to the litigation." See Highmark, Inc. V. UPMC Health Plan, Inc., 276 F.3d 160, 174 (3d Cir. 2001). Courts have held that the doctrine of unclean hands applies to Rule 41 motions. See, e.g., United States v. Howell, 425 F.3d 971, 974 (11th Cir. 2005) (denying defendant relief under Rule 41 (g), stating that, according to equitable principles, a defendant must come into the transaction with clean hands). In this case, there is no evidence to show that the source of the seized currency is anything other than illegal drug trafficking. Rather, the record indicates that Arevalo is a convicted drug felon seeking the return of drug money seized from a confederate.